IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TANYA ANUSIE-HOWARD,                    *

    Plaintiff,                      *

        v.                           *      CIVIL NO.: WDQ-12-199

WILLIAM TODD, et al.,                   *

    Defendants.                     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Tanya Anusie-Howard sued William Todd, Michael Baker, Mike Eppig, Anthony Lee, and the Baltimore County Board of Education (collectively the "Defendants") for violating the Family Medical Leave Act ("FMLA").[1] Pending is the Defendants' motion for summary judgment. ECF No. 38. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the Defendants' motion will be granted.

---

[1] 29 U.S.C. §§ 2601 et seq.

I.  Background[2]

Anusie-Howard is a building service worker at Millbrook Elementary School ("Millbrook"). ECF Nos. 38-3 at 2; 38-4 at 2-3.[3] Todd is a Buildings Operations Supervisor, Baker a Field Representative, Eppig a Senior Operations Supervisor, and Lee an employee[4] of Baltimore County Public Schools (BCPS). ECF No. 24 ¶¶ 3-5. Todd, Baker, and Eppig supervise Anusie-Howard. Id. ¶6; ECF Nos. 38-1 at 1-2, 7; 38-2 at 2. In 2007, Anusie-Howard's husband became disabled, and Anusie-Howard had to take time off from work to care for him. ECF No. 43-1 at 1.

On August 13, 2009, Anusie-Howard requested FMLA leave to care for her husband, who had a hernia. ECF No. 43-2 at 1 at 2. Anusie-Howard requested two weeks leave from August 29, 2009 to September 14, 2009, and intermittent leave (three days off per week), thereafter, until November 30, 2009. Id. at 1, 4. On August 24, 2009, Anusie-Howard's leave request--construed as a

---

[2] The facts are from the complaint, the Defendants' motion, Anusie-Howard's opposition, and their exhibits. In a motion for summary judgment, the nonmovants' evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[3] Anusie-Howard's duties included cleaning, facilities maintenance, and other assigned duties. ECF No. 38-1 at 2, 11-13.

[4] Anusie-Howard does not specify Lee's position. See ECF No. 24 at 3.

2

request to convert personal illness leave to family illness leave--was approved. ECF No. 38-5 at 2.[5] The conversion allowed Anusie-Howard "to be absent from work, with pay, for up to [eight] weeks"; if necessary, Anusie-Howard could take "[a]n additional four (4) weeks [leave] . . . without pay," under the FMLA. Id.[6]

Because of "the denial of FMLA benefits," on October 19, 2009, Anusie-Howard switched to a part-time position at Millbrook Elementary school. ECF No. 43-1 at 1; see also ECF No. 38-4.[7] Despite being a part-time employee, Anusie-Howard swore that the Defendants assigned her eight hours of work each

---

[5] In a February 9, 2012 email to William Wingerd, BCPS administrator, Kelly Hammond, BCPS personnel analyst, explained that employees are encouraged "to use paid time first before requesting unpaid leave." ECF No. 38-8 at 4. Typically, employees use personal illness time and sick leave when off work because of personal illness. Id. Employees also receive annual family illness leave. Id. When their family illness leave is exhausted, employees "are encourage[d] to" convert personal illness leave to family illness leave. Id. Converted leave "runs concurrently with FMLA"; if an employee needs more than the maximum 40 days paid leave, "they can apply for intermittent [unpaid] FMLA leave" "for the remaining weeks--up to 12." Id.

[6] Anusie-Howard swore that, from August to October 2009, she requested FMLA leave three times to care for her husband. ECF No. 43-1 at 1. Her "requests for FMLA benefits in October were wrongfully denied," which forced her to use vacation days to care for her husband. Id.

[7] Before her transfer, Anusie-Howard worked as a full-time employee at New Town Elementary School ("New Town"). ECF Nos. 24 at 2, 4; 38-4 at 2-3.

day, "comparable to that of full-time employees." ECF No. 43-1 at 1.[8]

On March 18, 2010, Anusie-Howard called in sick with a viral infection. ECF No. 43-1 at 1. Baker told her: "You need to bring your tail to work because you're being vindictive towards Pat."[9] Id. He then "threaten[ed]" Anusie-Howard "by indicating that he was aware of unidentified items in her personnel file that reflected negatively upon her" including "[her] use of FMLA benefits." Id.[10]

On April 14, 2010, Anusie-Howard filed a grievance report complaining that, on April 8, 2010, she had met with Kevin Roberts, another supervisor, when "she was out due to illness." ECF No. 43-5 at 1. Although Anusie-Howard had followed "proper call-in procedures," she was told to return to work. Id. Anusie-Howard further complained that an evaluation covering October 19, 2009 to March 5, 2010 had been changed. Id.[11]

---

[8] Anusie-Howard submitted an unsworn March 22, 2012 email from Raymond Whye describing her workload at New Town. ECF No. 43-4. Baker and Todd both swore that they never assigned Anusie-Howard the duties of a full-time employee during her tenure at Millbrook. ECF Nos. 38-1 ¶ 8; 38-2 ¶ 4.

[9] Anusie-Howard does not otherwise identify Pat.

[10] Baker disputes these contentions. ECF No. 38-1 ¶¶ 9-10.

[11] Anusie-Howard alleges that she had filed her April 14, 2010 grievance report in response to Roberts's assigning her a full-time workload, see ECF No. 24 ¶ 24; however, the grievance

On April 19, 2010, Anusie-Howard met with Roberts, Todd, and Lora Williams, a union representative to discuss her cleaning schedule. ECF No. 38-10 at 2. An April 28, 2010 letter summarizing the meeting stated that Anusie-Howard had expressed concern about Baker's March 18, 2010 call; however, Roberts had asked Baker to call Anusie-Howard to see if she was returning to work. Id. The letter further stated that Anusie-Howard's cleaning schedule required her to clean eight classrooms, at 20 minutes per classroom. Id. When other workers were off, Anusie-Howard had to "prioritize [her] workload: dumping the trash in each room, sweeping the big pieces of paper up off the floors, cleaning all bathrooms assigned, and sweeping the halls." Id.

On August 11, 2011, Anusie-Howard filed another grievance report complaining that her supervisors continued to assign her a full-time work schedule. ECF Nos. 24 at 7; 38-13 at 2.[12] Anusie-Howard requested a schedule adjustment whereby she would be assigned to eight classrooms in each four-hour shift. ECF No. 38-13 at 2.

---

report Anusie-Howard submitted does not mention her workload, see ECF No. 43-5 at 1.
[12] The grievance apparently asserted that additional work had been assigned to Anusie-Howard when other employees are off work, and over the summer. ECF No. 38-13 at 2.

In a January 6, 2012 letter addressing Anusie-Howard's grievance reports, Wingerd told Anusie-Howard that he believed that Roberts had adequately "identified the issues and taken steps to resolve the issues" noted in the April 14, 2010 report. ECF No. 38-13 at 3. Wingerd also stated that he had conferred with Eppig in connection with her August 11, 2011 report, and determined that her work-load was appropriate for a part-time employee. *Id*. Wingerd "disagree[d] with [Anusie-Howard's] assessment that [she had] been given a full time schedule." *Id*. at 3.

On September 1, 2011, Anusie-Howard filed a charge with the Equal Employment Opportunity Commission ("EEOC") stating that the Defendants and others had retaliated against her by giving her an excessive workload and falsifying her attendance records in retaliation for her use of her sick time. *See* ECF No. 15-1 (charge). On September 13, 2011, the EEOC sent Anusie-Howard a right to sue letter. ECF Nos. 24 at 8, 15-2.

On December 13, 2011, Anusie-Howard sued the Defendants in the Circuit Court for Baltimore County, Maryland for punitive and compensatory damages for (1) retaliation for filing for FMLA benefits (the "retaliation claim"), and (2) violation of the

FMLA (the "interference claim").[13]  ECF No. 2.  On January 20, 2012, the Defendants removed to this Court.  ECF No. 1.

On May 30, 2012, the Court granted the Defendants' motion to dismiss, but granted Anusie-Howard leave to amend her complaint.  ECF Nos. 13, 14.  On June 8, 2012, Anusie-Howard filed an amended complaint, alleging more information about her eligibility for benefits under the FMLA.  ECF No. 15.  On January 29, 2013, the Court granted in part and denied in part the Defendants' motion to dismiss the amended complaint,[14] and granted Anusie-Howard leave to amend her complaint to plead a *prima facie* case of retaliation.  ECF Nos. 22, 23.  On February 20, 2013, Anusie-Howard filed a second amended complaint.  ECF No. 24.  On November 18, 2013, the Court granted in part and denied in part the Defendants' motion to dismiss the retaliation claim in the second amended complaint.  ECF Nos. 30, 31.[15]

---

[13] *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (describing interference and retaliation claims).  An interference claim alleges a violation by an employer of the prescriptive rights created by the FMLA.  *Id.*

[14] The Court dismissed Anusie-Howard's interference claim in connection with her October 2008 request for FMLA benefits but did not dismiss her interference claim in connection with her October 2009 request for FMLA benefits.  See ECF No. 22 at 12-13.  She was not granted leave to amend her October 2008 interference claim, because the claim was barred by the statute of limitations, and the amendment would have been futile.  *See id.* at 18.

[15] The Court denied the motion as to Anusie-Howard's allegation that, in October 2009, "[t]he same month that [she] applied for

On July 18, 2014, the Defendants moved for summary judgment on all remaining claims. ECF No. 38.[16] On August 6, 2014, Anusie-Howard opposed the motion. ECF No. 43. On August 25, 2014, the Defendants replied. ECF No. 46.

II. Analysis

A. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material

---

FMLA benefits," the Defendants "continued to assign [her] a full-time work schedule," despite her newly part-time status. ECF Nos. 22 at 12; 24 ¶ 56(a). The Court granted the motion with prejudice in all other respects. ECF Nos. 22 at 11-12, 14; 23.

[16] Those claims include Anusie-Howard's (1) October 2009 FMLA interference claim, and her (2) retaliation claim concerning the workload assigned to her after her October 2009 FMLA request. *See* ECF No. 24 ¶¶ 56(a), 60-61.

[17] Federal Rule of Civil Procedure 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). The opposing party must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp.*, 477 U.S. at 322-23. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

    B.   Anusie-Howard's FMLA Claims

Under the FMLA, eligible employees are entitled to 12 weeks of leave during a 12-month period for covered reasons, including, caring for the employee's spouse. 29 U.S.C. § 2612(a)(1)(C).[18] Employers may not (1) "interfere with, restrain, or deny the exercise of" the right to that leave, or

---

[18] An eligible employee is an employee who has (1) been employed by the employer for at least the 12 months before taking FMLA leave, and (2) worked at least 1,250 hours of service for the employer during the 12 months before taking FMLA leave. 29 U.S.C. § 2611(2)(A).

(2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a).  A claim based on the first prohibition is an interference claim; one based on discrimination is considered a retaliation claim.  *Yashenko*, 446 F.3d at 546.

    1.    Interference

Anusie-Howard alleges that the Defendants interfered with her FMLA rights by refusing, in October 2009, to grant her request for FMLA leave, and by forcing her to use vacation and sick pay instead of "compensat[ing] her under the FMLA."  ECF No. 24 ¶¶ 60-61.[19]  To establish unlawful interference with an entitlement to FMLA benefits, Anusie-Howard must show that: "(1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled."  *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)); 29 U.S.C. § 2615(a)(1).  Interference may include "refusing to authorize FMLA leave" and "discouraging an employee from taking such

---

[19] *See also* ECF No. 22 at 12-13 (dismissing Anusie-Howard's October 2008 interference claim).

leave." *Croy v. Blue Ridge Bread, Inc.*, No. 3:12-CV-00034, 2013 WL 3776802, at *8 (W.D. Va. July 15, 2013)(quoting *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004) (citing 29 C.F.R. § 825.220(b))).

Additionally, Anusie-Howard must show that she suffered prejudice from the interference. *See Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 197-98 (4th Cir. 2013)(unpublished), *as amended* (May 3, 2013), *cert. denied*, 134 S. Ct. 1009, 187 L. Ed. 2d 851 (2014)(citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). Prejudice may include "lost compensation or benefits 'by reason of the violation,'" or "other monetary losses 'as a direct result of the violation.'" *Id.* at 198 (quoting 29 U.S.C. § 2617(a)(1)(A)(i)).

The Defendants assert that the record lacks "any evidence supporting [Anusie-Howard's] interference claim." ECF No. 41 at 7. Anusie-Howard asserts that the "Defendants' failure to diligently inquire[20] . . . does not negate the evidence of the harassing and unduly harsh [eight] hour work assignments," nor

---

[20] Anusie-Howard appears to contend that the lack of evidence stems, in part, from the Defendants' "fail[ure] to conduct discovery," such as by deposing her or issuing interrogatories. ECF No. 45 at 9-10. However, summary judgment against the party with the burden of proving her claim at trial is appropriate when the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 322-23.

her "testimony and evidence" about "ongoing harassment and hostility." ECF No. 45 at 9.[21] Anusie-Howard further asserts that she has suffered prejudice because she had to use vacation days to care for her husband, and switch to a part-time schedule. Id. at 9-10.

As a general rule, "[t]he FMLA entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve month period for specified family or medical reasons." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 300 (4th Cir. 1998) (citing 29 U.S.C. § 2612(a)(1),(c)); see also 29 C.F.R. § 825.207(a) ("Generally, FMLA leave is unpaid leave"). However, "the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave." 29 C.F.R. § 825.207(a); 29 U.S.C. § 2612(d)(2)(A); Campbell v. Verizon Virginia, Inc., 812 F. Supp. 2d 748, 757-58 (E.D. Va. 2011) aff'd, 474 F. App'x 167 (4th Cir. 2012)(granting summary judgment on FMLA interference claim when Verizon substituted unlimited paid sick leave for

---

[21] Anusie-Howard appears to be referring to a list of incidents from 2009 to 2011, copied from her sworn statement into her opposition. See ECF Nos. 45 at 2-7, 9; 43-1. Although Anusie-Howard argues in her opposition that an employer may violate the FMLA by "treat[ing] the employee with hostility" after the employee submitted a "request for benefits," ECF No. 45 at 9-10, Anusie-Howard's complaint plainly alleges that the Defendants "violated the FMLA by forcing [her] to use her personal vacation days, sick time, and other benefits, when [she] should have been compensated under the FMLA," ECF No. 24 ¶¶ 61-62. Anusie-Howard has not alleged that the Defendants interfered with her FMLA rights by treating her with hostility; those incidents were alleged as acts of retaliation. See id. ¶ 56(a)-(g).

unpaid leave). When substituting paid leave for unpaid FMLA leave, the employer "must give notice [that] they intend to do so." *Croy v. Blue Ridge Bread, Inc.*, No. 3:12-CV-00034, 2013 WL 3776802, at *8 n.2 (W.D. Va. July 15, 2013)(*citing* 29 C.F.R. § 825.300(e))("Failure to follow the notice requirements set forth in this section may constitute an interference with ... the exercise of an employee's FMLA rights."); *Campbell*, 812 F. Supp. 28 at 757 (finding that Verizon complied with the notice requirement when it informed the Plaintiff that his leave would count toward his 12-week FMLA allotment).

Here, Anusie-Howard's August 13, 2009 request for intermittent and block FMLA leave from August to November 2009 was approved--on August 24, 2009--as paid family illness leave. *See* ECF Nos. 43-2, 38-5; *see also* ECF No. 38-8 at 4 (explaining that employees should use paid personal and family illness leave before taking unpaid leave). The August 24, 2009 letter informed Anusie-Howard that she could take four weeks unpaid FMLA leave in addition to the (up to) eight weeks paid leave that she had received. ECF No. 38-5 at 2. Because the Defendants were entitled to require Anusie-Howard to use paid leave first, *see* 29 C.F.R. § 825.207(a), and provided notice of their intent to do so, *see id.* § 825.300(e), Anusie-Howard has

not shown that the Defendants interfered with her FMLA rights.[22] Thus, the Defendants are entitled to summary judgment on Anusie-Howard's interference claim. *See Campbell*, 812 F. Supp. 2d at 758.

    2. Retaliation

Anusie-Howard alleges that, in October 2009, "[t]he same month that [she] applied for FMLA benefits," the Defendants "continued to assign [her] a full-time work schedule," despite her newly part-time status. ECF No. 24 ¶ 56(a).[23] To establish a *prima facie* claim of retaliation, Anusie-Howard must show that (1) she engaged in a protected activity,[24] (2) her employer took adverse action against her, and (3) the adverse action was

---

[22] Though Anusie-Howard avers that she applied for FMLA benefits twice more between August and October 2009, she has not submitted evidence of those requests--or of the Defendants' alleged denials. *See* ECF Nos. 24 ¶¶ 21, 50, 60, 61; 43-1 at 1. Standing alone, Anusie-Howard's conclusionary affidavit is insufficient to establish a genuine dispute of material fact. *See Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Nor has Anusie-Howard explained how the Defendants violated the FMLA by requiring her to use paid leave before granting her unpaid FMLA leave. Anusie-Howard appears to believe--incorrectly--that she "should have been compensated under the FMLA." ECF No. 24 ¶ 61. However, the FMLA does not provide for *paid* leave apart from that provided by the employer; it provides for additional unpaid leave--up to 12 weeks--and grants protections not at issue here to employees utilizing FMLA leave. *See* 29 U.S.C. § 2612(a), (c)-(d).

[23] *See also* ECF No. 30 at 11-12 (finding that all other alleged retaliatory acts failed to support a *prima facie* retaliation claim).

[24] Requesting FMLA leave is a protected activity. *See Adams v. Wallenstein*, 814 F. Supp. 2d 516, 525 (D. Md. 2011).

14

causally connected to her protected activity. *Yashenko*, 446 F.3d at 551.

The Defendants assert that Anusie-Howard has failed to show that she suffered an adverse employment action. ECF No. 41 at 7-8. Anusie-Howard asserts that the expectation that she "complete double the amount of workload in half the time" amounted to an adverse action. ECF No. 45 at 13.[25] An action is an adverse employment action if "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (internal quotation marks omitted). Additional duties that "are so weighty as effectively to change these basic terms of employment" may amount to an adverse action. *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011) *aff'd*, 465 F. App'x 274 (4th Cir. 2012).

---

[25] Anusie-Howard asserts numerous other purportedly adverse actions, ECF No. 45 at 13-14; however, the Court previously found that those allegedly retaliatory acts did not support her retaliation claim. *See supra* note 23.

Anusie-Howard swore that the Defendants assigned her eight hours of work to be completed in her four-hour shift. ECF No. 43-1 at 1. In support, she relies on the unsworn March 22, 2012 Whye email, which describes her workload at New Town. ECF Nos. 45 at 13; 43-4.[26] Evidentiary issues associated with the Whye email notwithstanding, Anusie-Howard's allegations arise from her tenure at Millbrook, see ECF No. 24 ¶¶ 22, 56(a); her workload at New Town is not at issue. The Defendants have submitted uncontradicted affidavits from Baker and Todd swearing that they never assigned Anusie-Howard a full-time workload,[27] and, in April 2010, Roberts had explained to Anusie-Howard how she should "prioritize [her] workload" when other workers are off so that she can complete her assigned duties in her four-hour shift. ECF Nos. 38-1 ¶ 8; 38-2 ¶ 4; 38-10 at 2. Considerably later, in early 2012, Wingerd assessed Anusie-Howard's workload and deemed it appropriate for a part-time

---

[26] Anusie-Howard also attached various unexplained schematic drawings to her opposition, one of which was dated October 2009, which appear to indicate the areas that she was responsible for cleaning. ECF No. 43-5 at 1. Without an explanation, however, the Court cannot discern the purpose or context of these drawings.

[27] Anusie-Howard's conclusionary affidavit that she was "retaliated against by [her] supervisors for using FMLA benefits" is insufficient to withstand summary judgment. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999); Malghan v. Evans, 118 F. App's 731, 733 (4th Cir. 2004) (unpublished) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)).

employee. ECF No. 38-13 at 3. Because Anusie-Howard has not carried her burden on the adverse action element of her retaliation claim, the Defendants are entitled to summary judgment. *See Celotex Corp.*, 477 U.S. at 322-23; *Evans*, 80 F.3d at 962.

III. Conclusion

For the reasons stated above, the Defendants' motion for summary judgment will be granted.

2/26/15
Date

William D. Quarles, Jr.
United States District Judge